**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

MICHAEL D. ANDERSON, et al.,
      **Plaintiffs**

v.

TOWN OF CHATHAM and THE CHATHAM
POLICE DEPARTMENT,
      **Defendants.**

)
)
)
)
)
)
)
)
)
)

**Civ. No. 04-11911-RGS**

### PLAINTIFFS' MEMORANDUM IN SUPPORT OF ITS MOTION TO STRIKE AFFIRMATIVE DEFENSES AND TO DISMISS COUNTERCLAIMS

Pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), 12(b)(6), and 12(f), Plaintiffs hereby move this Court to strike three affirmative defenses and dismiss the two counterclaims filed by Defendants in their Answer to Complaint And Counterclaim. As grounds therefore, Plaintiffs argue: 1) the affirmative defenses have no legitimate basis in law or fact; 2) the Court lacks subject matter jurisdiction over the counterclaims, which involve a separate body of facts to be adjudicated under an entirely different body of law than Plaintiffs' complaint; 3) Defendants cannot seek recission of a collective bargaining agreement against Plaintiffs, who are not parties to that contract; 4) unjust enrichment is an invalid defense and claim given the undisputed existence of an agreement; and 5) Defendants fail to state a claim for mutual mistake, fraud, or unjust enrichment.

## I. FACTS[1]

This suit is an action brought by twenty-five (25) current and former members of the Chatham police department ("Plaintiffs") for alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). Specifically, Plaintiffs allege that the Town of Chatham and the Chatham Police Department ("Defendants") have willfully violated the FLSA by 1) failing to compensate Plaintiffs for training and "Report for Duty/Prepared for Duty" time; 2) failing to count "Report for Duty/Prepared for Duty" and training periods as "hours worked"; 3) failing to include the longevity, detective, and officer-in-charge stipends received by Plaintiffs in their "regular rate of pay" for purposes of calculating overtime pay; and 4) failing to maintain the records required by the FLSA and regulations. (Complaint)

In addition to all applicable federal and state laws and regulations, Plaintiffs' pay also is governed by the collective bargaining agreement ("Agreement") between the Town of Chatham and the Chatham Sergeants and Patrol Officers Union, MCOP Local 294, AFL-CIO ("Union"). (Complaint ¶31, Admitted). Certain provisions of that Agreement provide the Plaintiffs with compensation that is greater than that required by the FLSA. (Defendant's Second Affirmative Defense). None of the Plaintiffs are parties to that Agreement, which is between only the Town and the Union. *Compare* Miller v. Board of Regents of Higher Educ., 405 Mass. 475, 480 (1989).

In response to the complaint, Defendants assert four affirmative defenses and two counterclaims. Defendants' second affirmative defense asserts that because the

---

[1] For purposes of this motion, the reviewing court accepts as true the well-pleaded factual allegations of the counterclaim, draws all reasonable inferences therefrom in the complainant's favor and determines whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory. Martin v. Applied Cellular Technology, Inc., 284 F.3d 1, 6 (1st Cir. 2002).

collective bargaining agreement provides certain compensation greater than the FLSA, Plaintiffs would be unduly enriched if the Town were required to comply with the FLSA. Defendants' fourth affirmative defense asserts that Plaintiffs should be estopped based on the actions of the Union in negotiating successive collective bargaining agreements. (Defendants' Answer and Counterclaims).

In their counterclaims, Defendants' allege that Plaintiffs entered into collective bargaining agreements with the Town.[2] (Counterclaim, ¶4). The Town further alleges that it would have addressed its FLSA violations during collective bargaining if it had been aware of those violations.[3] (Counterclaim, ¶5). In its counterclaim for "Recission," the Town alleges that Plaintiffs did not inform it that it was violating the law, and that if it had know it was violating the law, it would have been behaved differently in bargaining with the Union. (Counterclaim, ¶7). As a result of this, the Town seeks to have the Court rescind the Agreement, entered into wholly pursuant to state law, with the Union.

In their counterclaim for "Unjust Enrichment," the Defendants Town and Police Department seek to recoup any amounts they paid to Plaintiffs pursuant to their contractual obligations created by the Agreement that may be above FLSA requirements.

---

[2] Although the Court is required to view all facts in favor of the non-moving party, Defendants allege a legal impossibility when they state that the Plaintiffs, *qua* individual police officers, entered into a collective bargaining agreement with the Town. Only a labor organization signs a *collective* bargaining agreement. Miller v. Board of Regents of Higher Educ., 405 Mass. 475, 480 (1989). Hence, the only reasonable inference of this allegation is that the Union entered into an Agreement with the Town.

[3] Again, for purposes of this motion, this allegation is taken as true. However, it should be noted that Plaintiffs' complaint alleges that the Union specifically informed the Town of its FLSA obligations. Complaint, ¶45).

## II.  ARGUMENT

### a.  The Court Should Strike The Defendants' Affirmative Defenses Of Unjust Enrichment, Waiver And Estoppel.

Under Fed.R.Civ.P. 12(f), an affirmative defense may be stricken if it is legally insufficient, redundant, immaterial, impertinent or scandalous.  Motions to strike defenses are granted when it is "beyond cavil that the defendant could not prevail on them."  <u>Honeywell Consumer Products, Inc. v. Windmere Corp.</u> 993 F.Supp. 22, 24 (D.Mass. 1998) (citations omitted).

Defendants' affirmative defenses of unjust enrichment, waiver and estoppel have no reasonable basis in fact or law.  Defendants allege that Plaintiffs have been unjustly enriched because they have received compensation under a collective bargaining agreement that exceeds the minimum amount required by the FLSA.  However, unjust enrichment, which is a quasi-contract theory of recovery, is not a proper defense to excuse or reduce liability under the FLSA or a contract.  See, e.g., <u>Verderber v. Perry</u>, 181 F.3d 81, 1999 WL 525953, *5 (1st Cir. 1999) (unpublished) (attached).  Once Defendants enter into a contract, they cannot seek to reduce their agreed-upon obligations through complaints of inequity.[4]  Defendants' logic, moreover, is

---

[4] A theory of economic duress is equally unavailing.  As stated in <u>International Underwater Contractors, Inc. v. New England Tel. & Tel. Co.</u>, 8 Mass.App.Ct. 340, 342 (1979), financial hardship does not excuse nonperformance:

> "Merely taking advantage of another's financial difficulty is not duress.  Rather, the person alleging financial difficulty must allege that it was contributed to or caused by the one accused of coercion."  Williston, <u>supra</u>, §1617, at 708.  Thus "(i)n order to substantiate the allegation of economic duress or business compulsion . . . (t)here must be a showing of acts on the part of the defendant which produced (the financial embarrassment).  The assertion of duress must be proved by evidence that the duress resulted from defendant's wrongful and oppressive conduct and not by plaintiff's necessities."  <u>W. R. Grimshaw Co. v. Nevil C. Withrow Co.</u>, 248 F.2d 896, 904 (8th Cir. 1957).

Moreover, the Town is hard pressed to allege that it, a public employer with access to counsel and a history of labor negotiations, was at a significant bargaining disadvantage.  <u>Id.</u> at 972.

4

preposterous on its face: under their reasoning, anyone receiving in excess of collectively bargained benefits that exceed FLSA minimums, which would include anyone earning more than the minimum wage, is "unjustly enriched."[5] See also Morales v. Showell Farms, Inc., 910 F.Supp. 244, 248 (M.D.N.C. 1995) (FLSA pre-empts state laws only to the extent that they are less generous than the federal law);

Defendants' affirmative defenses of waiver and estoppel similarly are without merit. "[T]he lack of a valid union contract is never a defense to violations of the Fair Labor Standards Act." United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co., Inc., 732 F.2d 495, 499 (6th Cir. 1984). The Union's failure to address FLSA overtime liability during collective bargaining cannot constitute waiver or estoppel of Plaintiff's claims in this suit. Defendants' assertion to the contrary flies in the face of well-settled FLSA law, recently affirmed by the circuit court of appeals. "[E]ven assuming a CBA can waive an employee's right to a federal forum, any such waiver must at a minimum be 'clear and unmistakable.'" O'Brien v. Town of Agawam, 350 F.3d 279, 285 (1st Cir. 2003). The First Circuit held that a garden-variety arbitration clause is insufficient to waive an FLSA suit. Here, Defendants do not, and cannot, point to any clear and unmistakable language underlying their purported affirmative defenses that FLSA claims were waived during collective bargaining.

In the absence of any legitimate basis in law or fact that indicate any chance of success, the Court should strike Defendants' affirmative defenses two through four.

---

[5] The FLSA already contains provisions that allow employers to offset certain payments against its FLSA liability. See, e.g., 29 U.S.C. §207. This affirmative defense, if not struck from the Answer, should be read to provide Defendants with only the credits, offsets, and benefits expressly permitted by the FLSA.

### b. The Court Should Dismiss Defendants' Counterclaims For Lack Of Jurisdiction And Failure to State A Claim.

#### i. The Court Lacks Subject Matter Jurisdiction Over Defendants' Counterclaims.

##### 1. Defendants' Counterclaims, Which Implicate Different Facts, Parties and Laws, Have No Logical Relationship To Plaintiffs' Claims.

The Court should dismiss the counterclaims for want of subject matter jurisdiction. The first step in determining subject matter jurisdiction of a counterclaim is determining whether the counterclaim is compulsory or permissive. Maritimes & Northeast Pipeline, L.L.C. v. 16.66 Acres of Land. 190 F.R.D. 15, 17 (D.Me.,1999). A federal court has jurisdiction over a counterclaim only if: (a) it is compulsory or (b) it is permissive and has its own jurisdictional predicate. Iglesias v. Mutual Life Ins. Co. of New York, 156 F.3d 237, 241 (1st Cir. 1998). Under Rule 13 of the Federal Rules of Civil Procedure, a court may exercise supplementary jurisdiction over a compulsory counterclaim. Ibid. If the claim is not compulsory, it necessarily is permissive and this permissive claim must attain its own jurisdictional predicate. Ibid. [6]

A compulsory counterclaim is one that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed.R.Civ.P. 13(a). The First Circuit has identified four tests to determine whether a counterclaim is compulsory or permissive:

1) Are the issues of fact and law raised by the claim and counterclaim largely the same?

---

[6] Standing alone, the counterclaims raise no justiciable issue for federal courts. See, e.g., Carmen v. San Francisco Unified School Dist., 982 F.Supp. 1396, 1409 (N.D.Cal.1997), aff'd, 237 F.3d 1026 (9th Cir. 2001) (federal courts lack jurisdiction to adjudicate claims of breaches of state public sector collective bargaining agreements); Textron v. UAW, 523 U.S. 653, 658 (1998) (§301 does not confer jurisdiction over complaint by private sector union that it was fraudulently induced to sign collective bargaining agreement).

2) Would res judicata bar a subsequent suit on defendant's claim absent
the compulsory counterclaim rule?
3) Will substantially the same evidence support or refute plaintiff's claim
as well as defendant's counterclaim?
4) Is there any logical relation between the claim and the counterclaim?

Iglesias, 156 F.3d at 241-242.  The "logical relation" test, which the First Circuit has

explored, has two prongs: (a) whether the same aggregate of operative facts serves as

the basis of both claims; or (b) whether the aggregate core of facts upon which the

original claim rests activates additional legal rights in a party defendant that would

otherwise remain dormant.  Iglesias, 156 F.3d at 241-242 (citations omitted).

Courts are generally reluctant to permit employers, especially in FLSA actions, to

counterclaim state law issues in the context of federal employment litigation.  By

definition, employer counterclaims interfere with the purposes underlying the federal

minimum wage and overtime law.

> The purpose of the FLSA is to insure employer compliance with minimum
> wage and overtime standards.  Brennan v. Heard, 491 F.2d 1, 4 (5th
> Cir.1974).  If an employer is permitted to collect on a debt owed the
> employer by its employees via a separate action or counterclaim to an
> action under the FLSA, the purpose of the Act is undermined.  "To permit
> [an employer] in [an FLSA] proceeding to try his private claims, real or
> imagined, against his employees would delay and even subvert the whole
> process."  Donovan v. Pointon, 717 F.2d 1320, 1323 (10th Cir.1983)
> (recommending that Defendant pursue independent claims against
> employees for cash advances and damages in state court).  See also
> Heard, 491 F.2d at 4 ("To clutter these proceedings with the minutiae of
> other employer-employee relationships would be antithetical to the
> purpose of the Act.").

Morrisroe v. Goldsboro Mill. Co., 884 F.Supp. 192, 195-196 (E.D.N.C. 1994).

In Morrisroe, supra, the Court rejected an employer's counterclaim to recover

"reasonable costs for providing housing, electricity and supplies" paid to FLSA plaintiffs.

Defendants already asserted this claim in its affirmative defense, which is expressly

permitted by the FLSA, and the FLSA does not permit an independent action in the absence of backpay liability.

In *Donovan v. Pointon*, 717 F.2d 1320 (10th Cir. 1983), which was an FLSA enforcement action by the Secretary of Labor, the defendant sought to assert counter and third-party claims against the employees, who were not parties to the suit. The district court's dismissal of the employer's claims was upheld. "[The defendant] is free to sue his employees in state court, as we are advised he is doing, for any sum which he feels is due and owing him." *Id.* at 1323.

In *Wagner v. East Growers Ass'n*, 1991 WL 198557 (E.D.Pa. 1991) (unpublished) (attached), the federal court dismissed the employer's counterclaim for loan repayment as unrelated factually and legally to the FLSA claim. The plaintiffs' complaint questioned whether the employer violated state and federal labor laws and whether the employer's business was exempt from these laws. The counterclaim, meanwhile, asked the court to determine whether a loan occurred and, if so, whether repayment is still owing. The overlap of an employment relationship to both claims was insufficient to compel jurisdiction under a "logical relationship" theory. *Id.* at *2.

Likewise, in *Shamblin v. City of Colchester*, 793 F.Supp. 831, 834 (C.D.Ill.,1992), the court threw out an employer's counterclaim that an FLSA plaintiff breached a fiduciary duty owed by to his public employer by engaging in criminal activity while on duty. Rejecting the assertion that the common employment established a foundation for both sets of claims, the court ruled, "the two claims raise different legal and factual issues governed by different bodies of law, and lack any shared realm of genuine dispute." 793 F.Supp. at 834.

Applying the weight of these decisions to the instant matter, it is clear that Defendants impermissibly seek to clutter and confuse the docket of an FLSA claim with unrelated, peculiar state law claims against a non-party.  As noted above, Defendants functionally counterclaim against the Union, a non-party.  *See* <u>Donovan v. Pointon</u>, *supra*.  Additionally, the operative facts and law in the counterclaims are wholly dissimilar to Plaintiffs charges.  In the FLSA suit, Plaintiffs allege that the Employer's payroll practices, in a myriad of ways, violated federal minimum wage and overtime obligations, despite specific notice about their FLSA obligations.  The evidence will consist of a sober examination of Defendant Town's payroll calculations, based upon Plaintiffs' terms of employment, as compared with FLSA requirements.  By contrast, the Defendants' state law counterclaims of mutual mistake and fraud seek to litigate, if not inflame, the collective bargaining relationship between the Town and the non-party Union.  They do not rely upon contract language exhibiting a clear and unmistakable waiver of FLSA claims.[7]  The commonality of an employment relationship, including a collective bargaining agreement, is insufficient to create a logical relationship with the FLSA claims.  Furthermore, the law used to adjudicate Defendants' allegations is not the federal law, such as FLSA or federal common law, but a rarified field of state law.  *See* <u>Carmen v. San Francisco Unified School Dist.</u>, 982 F.Supp. 1396, 1409 (N.D.Cal.1997), <u>aff'd</u>, 237 F.3d 1026 (9th Cir. 2001).  The counterclaims ask this Court to determine, necessarily, whether the Defendants and the Union bargained in good faith and whether either had any statutory duty to disclose opinions of overtime liability.  *See* G.L. c. 150E, §§6, 10(a)(5).  Mutual mistake and fraud necessarily survey whether

---

[7] Any statement made by a Plaintiff(s) during collective bargaining, needless to say, would have occurred in his or her *official* capacity as a Union official, not as an individual officer employed by the Defendant.

the parties' intent was incorporated into the resultant agreement.  G.L. c.150E, §8.

What an agreement means, and was intended to mean, is primarily the province for a

neutral arbitrator to decide.  *See id.* Given the nexus of collective bargaining and

contract interpretation to their allegations, it may very well be that the public employer's

claims of fraud and mutual mistake are precluded by, or otherwise subsumed within,

remedies under the grievance/arbitration process and Chapter 150E, further defeating

this Court's jurisdiction.[8]  *Cf.*, Leahy v. Local 1526, AFSCME, 399 Mass. 341, 349

(1987) (departing from federal rule and bestowing exclusive primary jurisdiction of duty

of fair representation claims upon state labor relations commission); Hanley v. Lobster

Box Restaurant, Inc., 35 F.Supp.2d 366, 369 (S.D.N.Y.,1999) (refusing to accept

supplemental jurisdiction over pre-empted, third-party claimed of fraud and negligent

misrepresentation against union).

    With regard to the counterclaim of unjust enrichment, even assuming *arguendo* it

is a viable theory, the Court should apply the reasoning in *Morrisroe*, *supra*, to dismiss it

out of hand.  As in that case, the FLSA provides avenues for Defendants receive credits

and deductions against FLSA liability, *see, e.g.,* 29 U.S.C., §207, and the Defendants'

claim of unjust enrichment, as alleged, makes no sense absent a predicate finding of

backpay liability.

---

[8] The primary avenues to resolve labor relations disputes in Massachusetts are administrative and
private.  Massachusetts has delegated primary oversight of bargaining obligations to the Labor Relations
Commission. City of Worcester v. Labor Relations Com'n 438 Mass. 177, 180 (2002) ("We therefore
must accord deference to the commission's specialized knowledge and expertise, and to its interpretation
of the applicable statutory provisions").  Meanwhile, Massachusetts courts have advanced a strong public
policy for private arbitration of employment disputes, namely in reference to collective bargaining
agreements. Bureau of Special Investigations v. Coalition of Public Safety, 430 Mass. 601, 603 (2000)
("We start with the principle that there is a 'strong public policy favoring arbitration'").

Defendants' counterclaims rest on an inapposite body of facts and law and hence bear no logical relationship to Plaintiffs' suit. As such, the counterclaims are permissive and, they must be dismissed in the absence of independent federal jurisdiction.

### ii. The Court Should Decline Jurisdiction Of A Novel State Law Claim.

Even assuming the counterclaims are compulsory and may be subject to supplementary jurisdiction, the Court nonetheless may decline jurisdiction. Section 1367(c) of Title 28 grants courts discretion to decline jurisdiction if (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. §1367(c).

For all the reasons aforestated, the Court should decline consideration of the counterclaims. In addition, the counterclaims stress unique areas of state law, including whether public sector bargaining entities have mutual obligations to bargain or affirmatively disclose opinions regarding federal overtime liability. Furthermore, adjudication of the issue by a federal court would encroach upon the labor relations and contract expertise entrusted to state administrative agencies and arbitrators.

iii. **"Recission" And Unjust Enrichment Are Improper Counterclaims**.

1. **As Plaintiffs Are Not Parties To The Collective Bargaining Agreement, Defendants Cannot Use This Suit To Seek Recission Of The Fraud Or Mutual Mistake**.

Under Count One of its claim, Defendants seek to rescind its Agreement with the Chatham Sergeants and Patrol Officers Union.[9]  This prayer for relief is inappropriate in an action against Plaintiffs, who are not parties to the Agreement and hence have no standing to enforce or disclaim its terms.  Miller v. Board of Regents of Higher Educ., 405 Mass. 475, 480 (1989).  A collective bargaining agreement, by definition, is an accord between a labor organization and an employer. See id.; M.G.L. c.150C, §1; c.150E, §§7(a),8.  Therefore, the Court has no authority to order relief to a contract against non-parties to the Agreement.

2. **Unjust Enrichment Generally Is Not A Defense To Liability Under The FLSA And A Valid Contract**.

Defendants' claim of unjust enrichment[10] is not an appropriate challenge to liability under the Fair Labor Standards Act or a collective bargaining agreement.  The First Circuit concluded,

"Unjust enrichment is a doctrine of quasi-contract; it prevents unjust enrichment when no contract controls.  Massachusetts law does not allow litigants to override an express contract by arguing unjust enrichment. See Zarum v. Brass Mill Materials Corp., 334 Mass. 81, 85, 134 N.E.2d 141 (1956) (collecting cases); see also Garnick & Scudder, P.C. v. Dolinsky, 45 Mass.App.Ct. 925, 926, 701 N.E.2d 357 (1998) (reaching same result under related doctrine of quantum meruit).  Even ignoring the foregoing point, we do not see how unjust enrichment can justify the

---

[9] Defendants title Count 1 as "recission."  Recission is a form of equitable relief, not a cause of action. See Case of Cummings, 52 Mass.App.Ct. 444, 447 n.2 (2001) ("Rescission is an equitable remedy granted when there has been a mutual mistake of fact or fraud between the parties").

[10] Unjust enrichment requires allegations that 1) Defendants conferred a benefit upon Plaintiffs; 2) Plaintiffs' retention of the benefit or enrichment resulted in a detriment to Defendants; and 3) Plaintiffs' acceptance or retention of the benefit is unjust.  Brandt v. Wand Partners, 242 F.3d 6, 16 (1st Cir. 2001).

> contested deduction.  This doctrine was developed to redress "unjust
> enrichment of one party and unjust detriment to the other party."  <u>Bushkin</u>
> <u>Assocs., Inc. v. Raytheon Co.</u>, 906 F.2d 11, 15 (1st Cir.1990) (interpreting
> Massachusetts law) (citing <u>U.S. Controls Corp. v. Windle</u>, 509 F.2d 909,
> 912 (7th Cir.1975)).  We find neither of these elements here.  The
> Verderbers, who seek only the benefit of their bargain, cannot be unjustly
> enriched thereby.

<u>Verderber v. Perry</u>, 181 F.3d 81, 1999 WL 525953, *5 (1st Cir. 1999) (unpublished)

(attached).  In *Verderber*, the First Circuit held that the district court could not use a

quasi-contract theory to reduce the amount of money required to be paid under a

contract.  The reasoning of the case controls here: Defendant cannot establish that

Plaintiffs are unjustly enriched by receiving what is required under federal law and under

a collective bargaining agreement voluntarily and knowingly entered into by Defendants.

*See also* <u>Morrisroe</u>, <u>supra</u>.

Unjust enrichment is not a permissible ground to reduce or void what otherwise is

required by law and contract.

### iv.  Defendants Fail to State Evidence of Fraud Or Mutual Mistake With Sufficient Particularity.

Under Rule 9(b) of Federal Rules of Civil Procedure, "[i]n all averments of fraud

or mistake, the circumstances constituting fraud or mistake shall be stated with

particularity."  This rule is satisfied if the pleading sets forth: precisely what statements

or omissions were made; the time, place and person responsible for each such

statement or omission; the content of such statements or omissions and their affect on

Defendants; and what Plaintiffs gained from the fraud.  <u>Official Publications, Inc. v.</u>

<u>Kable News Co., Inc.</u>, 775 F.Supp. 631 (S.D.N.Y.1991).  *See also* <u>Arruda v. Sears,</u>

<u>Roebuck & Co.</u>, 310 F.3d 13, 19 (1st Cir. 2002) (requirement "entails specifying in the

pleader's complaint the time, place, and content of the alleged false or fraudulent

representations"). "With respect to omissions, plaintiff alleging fraud must plead type of facts omitted, type of document in which they should have appeared and way in which their omission made documents misleading." Fujisawa Pharmaceutical Co., Ltd. v. Kapoor, 814 F.Supp. 720, 727 (N.D.Ill.1993).

Here, Defendants fail to allege with particularity any misstatement or omission made by Plaintiffs. In the context of omissions, the Defendants' Answer and Counterclaims fails to allege any duty of Plaintiffs to disclose information to the Town, its bargaining adversary. As such, the counterclaims must be dismissed for want of sufficient particularity.

### v. Defendants Fail To State A Claim For Mutual Mistake, Fraud Or Unjust Enrichment.

The sparse allegations in Defendant's Answer and Counterclaim fail to justify recission or restitution under theories of mutual mistake, fraud, or unjust enrichment.

For a motion to dismiss, the reviewing court accepts as true the well-pleaded factual allegations of the complaint, draws all reasonable inferences therefrom in the complainant's favor and determines whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory. Martin v. Applied Cellular Technology, Inc., 284 F.3d 1, 6 (1st Cir. 2002).

> The pleading requirement is "not entirely a toothless tiger." Thus, a Complaint must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." The Court, however, need not accept a complaint's " 'bald assertions' or legal conclusions" when assessing a motion to dismiss. The plaintiff has an affirmative responsibility "to put [his] best foot forward in an effort to present a legal theory that will support [his] claim."

<u>Nater v. Riley</u>, 114 F.Supp.2d 17, 20 (D.P.R. 2000) (citations omitted), *aff'd*, (1st Cir.

2001) (unpublished).  To support its counterclaims, Defendants allege only that: 1) they

entered into two successive collective bargaining agreements during the timeframe that

Plaintiffs seek compensation for the alleged violation of the FLSA; and 2) Defendants

would have addressed FLSA liability within the context of collective bargaining had they

been aware of the potential for the claims asserted in this lawsuit.

In Count One, Defendants seek to rescind its Agreement with the Union because

it allegedly was induced as the result of fraud and/or mutual mistake.  In Count 2,

Defendants claim that Plaintiffs have been unjustly enriched because the collective

bargaining agreement requires payments to them not required by the FLSA.  The

attendant allegations are insufficient to substantiate these claims.

### 1. The Fraud Counterclaim Must Be Dismissed Because Defendants Fail to Allege Any Material False Statements or Omissions By A Person With A Duty To Disclose.

Defendants cannot establish a claim of fraud because they nowhere allege

Plaintiffs made a statement that was knowingly false, such a statement was made with

the intent to deceive, or that Defendants reasonably relied on the falsity.  <u>Kenda Corp.,</u>

<u>Inc. v. Pot O'Gold Money Leagues, Inc.</u>, 329 F.3d 216, 225 (1st Cir. 2003) (defendants

also must show that the statement was material to their decision to sign the contract;

that they were injured as a result of their reliance).  They also cannot establish fraud by

omission, which only is actionable where a party concealed material information under a

duty requiring disclosure.  <u>Sahin v. Sahin</u>, 435 Mass. 396, 402 (2001).  Here, it

confounds logic to claim that, even assuming Plaintiffs are proper parties, and knew and

concealed FLSA violations from Defendants, that they owed a duty to disclose legal

advice to their collective bargaining adversaries. *Cf.* Robertson v. Gaston Snow & Ely Bartlett, 404 Mass. 515, 524 (1989) (attorneys generally do not owe duties to non-clients, especially where the non-client and client have independent and potentially conflicting interests). Finally, they cannot establish that their reliance on an omission from an adversary was reasonable, absent clear and unmistakable contract language that comprehensively addresses external federal law. The counterclaim of fraud, therefore, must be dismissed for failure to state a prima facie case.

### 2. The Counterclaim Of Mutual Mistake Must Be Dismissed For Failure To Allege Any Mutuality Or Materiality.

Similarly, Plaintiffs fail to allege any mutual mistake, namely "a basic assumption on which the contract was made has a material effect on the agreed exchange of performances." Covich v. Chambers, 8 Mass.App.Ct. 740, 749 (1979) (*quoting* Restatement (Second) of Contracts). "[T]he contract is voidable by the adversely affected party unless he bears the risk of the mistake . . .. A party bears the risk of a mistake when . . . he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates, but treats his limited knowledge as sufficient . . .." *Ibid.*

Defendants allege only, by implication and speculation, that they believed the labor contracts with the non-party Union adequately addressed issues of overtime and FLSA liability. At best, this allegation supports a *unilateral* mistake. *See* Counterclaim, ¶8: "[Plaintiffs] knew of the alleged violations of the [FLSA] but failed to disclose same." A unilateral error generally is not grounds for recission. First Safety Fund Nat. Bank v. Friel, 23 Mass.App.Ct. 583, 588 (1987). *See also* Finn v. McNeil, 23 Mass.App.Ct. 367, 373 (1987) (party may not avoid contract via unilateral mistake of law). "Avoidance is

not permitted just because one party is disappointed in the hope that the facts accord with his wishes." Covich, 8 Mass.App.Ct. at 750. Whether characterized as mistake of law or fact, Defendants fail to allege sufficient facts to establish that any mistake was mutual and material: they do not allege any affirmative representations made by anyone, let alone Plaintiffs, during bargaining negotiations that indicate the resultant agreements satisfied FLSA requisites.[11] Lacking sufficient support to establish any mistake was mutual and material, this counterclaim should be dismissed.

### 3. The Unjust Enrichment Counterclaim Must Be Dismissed Because Defendants Acknowledge Its Contract And Legal Obligations.

As discussed in previous sections, Defendants' acknowledgement of a collective bargaining agreement and the FLSA to dictate terms of employment necessarily vitiates an independent quasi-contract claim for unjust enrichment. This counterclaim, therefore, must be dismissed.

## III. Conclusion

For the foregoing reasons, the Court should strike three affirmative defenses and the two counterclaims.

---

[11] Nor can Defendants point to contract language sufficient to address FLSA liability. Courts require that agreements contain clear and unmistakable language regarding FLSA issues in order to show that claims have been definitively subsumed into any agreement. See, e.g., Curtis v. U.S., 59 Fed.Cl. 543, 549 (Fed.Cl.2004) (arbitration clauses contain clear and unmistakable waivers of judicial remedies only if the clause provides that employees specifically agree to present all federal statutory claims relating to their employment to arbitration and a waiver of a statutory right must explicitly incorporate the statute's requirements).

Respectfully submitted,

**MICHAEL D. ANDERSON, et al.,**

By their attorneys,

Bryan Decker, BBO # 561247
Patrick Bryant, BBO # 652200
*Sandulli Grace, P.C.*
One State Street, Suite 200
Boston, MA 02109
617-523-2500

Dated:        November 24, 2004

Westlaw.

181 F.3d 81 (Table)
181 F.3d 81 (Table), 1999 WL 525953 (1st Cir.(Mass.))
**Unpublished Disposition**
**(Cite as: 181 F.3d 81, 1999 WL 525953 (1st Cir.(Mass.)))**

Page 1

**C**

Briefs and Other Related Documents

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA1 Rule 36 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, First Circuit.

Paula VERDERBER and Joseph Verderber,
Plaintiffs, Appellants,
v.
Winston C. PERRY, Parker D. Perry, and Andrea J.
Perry, Defendants, Appellees.

No. 98-1625.

March 8, 1999.

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. William G. Young, U.S. District Judge]

Barry S. Scheer, with whom Parker Scheer, Attorneys were on brief, for appellants.

Rosemary Traini, with whom Robert G. Cohen and Gittelsohn, Traini & Cohen were on brief, for appellees.

Before BOUDIN, Circuit Judge, GIBSON, Senior Circuit Judge, [FN*] and LYNCH, Circuit Judge.

> FN* Of the Eighth Circuit, sitting by designation.

LYNCH.

**\*\*1** Winston, Parker, and Andrea Perry owned twenty-three acres of undeveloped land in Walpole, Massachusetts ("the land"). The Perrys contracted with Paula Verderber, a local real estate agent, and Joseph Verderber, a local contractor, to subdivide and develop the land. When the Perrys canceled the deal,

the Verderbers filed suit. The district court found the Perrys liable for breach of contract, but awarded damages well below the Verderbers' demand. The Verderbers appeal from this damage award.

I

We discuss only those facts relevant to this appeal. The parties formalized their contract through a letter agreement, the validity of which is not challenged before this court. The contract was quite simple; its relevant aspects were even simpler. The Perrys would provide the land in exchange for the first $800,000 from its sale. [FN1] Verderber Real Estate (essentially, Paula Verderber) would provide "marketing and sales effort" in return for a 5% brokerage commission on all sales. The Perrys would pay 60%, and the Verderbers 40%, of expenses incurred in the development process. These payments would be reimbursed "in full from the proceeds of the sale of the lots *before* the net amount is divided." (emphasis in original). The net amount--the profits-- would be apportioned 60% to the Perrys and 40% to the Verderbers.

> FN1. The land was listed as Phase Two of the project; Phase One involved a different parcel. Although Phase One apparently never took place, no breach is alleged as a result.

The project moved through its preliminary phases. Despite the sixty-forty split intended by the contract, the Perrys paid the vast majority of the expenses incurred. Before ground was broken on the development's homes, however, Winston Perry lost confidence in the Verderbers, and the Perrys canceled the contract. The Verderbers filed this action in Superior Court, and the Perrys removed to federal court under diversity jurisdiction. The district court heard the case on an expedited, jury-waived basis. After a three-day trial, the court found the Perrys in breach, and awarded damages to the Verderbers of $41,656.59. The Verderbers moved to amend the judgment, challenging the award as too low. The district court denied this motion, citing the contract doctrines of setoff and unjust enrichment. The Verderbers appealed. [FN2] Before this court, the parties dispute neither the district court's factual findings nor most of its arithmetic; their arguments

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

181 F.3d 81 (Table)
181 F.3d 81 (Table), 1999 WL 525953 (1st Cir.(Mass.))
**Unpublished Disposition**
(Cite as: 181 F.3d 81, 1999 WL 525953 (1st Cir.(Mass.)))

focus on a single aspect of the damages calculation.

> FN2. The Verderbers appealed both from
> the entry of judgment and from the denial of
> their motion to amend. In this circuit, "an
> order denying a Rule 59(e) motion
> challenging the judgment constitutes a
> 'judgment,' and is therefore appealable
> separately from the appeal of the underlying
> judgment." _Acevedo-Villalobos v._
> _Hernandez,_ 22 F.3d 384, 390 (1st Cir.1994)
> (citing _Kersey v. Dennison Mfg. Co.,_ 3 F.3d
> 482, 485 n. 6 (1st Cir.1993)). Both appeals
> concern the same calculation, however, and
> we resolve them together.

II

This court reviews "the district court's findings of
fact for clear error and its conclusions of law de
novo." _Arthur D. Little, Inc. v. Dooyang Corp.,_ 147
F.3d 47, 54 (1st Cir.1998) (citing _Cambridge Plating_
_Co. v. Napco, Inc.,_ 85 F.3d 752, 769 (1st Cir.1996)).
In its initial ruling from the bench, the district court
grounded its decision on the facts; in denying the
motion to amend the judgment, however, the court
relied on contract doctrines. We examine these
rulings from both perspectives: first, as to whether
the description of facts is clear error, and second, to
see if the court correctly applied the law. [FN3]

> FN3. This court reviews denial of a motion
> to amend for abuse of discretion. _See_
> _National Metal Finishing Co. v._
> _Barclaysamerican/Commercial, Inc.,_ 899
> F.2d 119, 124 (1st Cir.1990). Our review of
> the denial at issue is confined to the law
> applied therein. "As the Supreme Court has
> stated, '[a] district court by definition abuses
> its discretion when it makes an error of law.'
> " _Alison H. v. Byard,_ 163 F.3d 2, 4 (1st
> Cir.1998) (alteration in original) (quoting
> _Koon v. United States,_ 518 U.S. 81, 100, 116
> S.Ct. 2035, 135 L.Ed.2d 392 (1996)).

**\*2** The district court calculated damages based on
the parties' expectations, or the "value of performance
of [the] contract to the plaintiff [s]." [FN4] To find
this value, the court made several subsidiary findings
of fact. The court found that "the fair per lot
valuation" was $147,500, and that the land included
fifteen lots. To develop and sell these lots, the court
found, the parties would have to pay $740,649 in
development costs. [FN5] The court projected the

contract's value by subtracting costs from revenue:

> FN4. The law of Massachusetts governs this
> action. Although the district court did not
> explicitly determine its choice of law, both
> parties cite Massachusetts cases in their
> briefs to this court. Where litigants on
> appeal assume a choice of law, we may
> accept their choice. _See New Ponce_
> _Shopping Ctr., S.E. v. Integrand Assurance_
> _Co.,_ 86 F.3d 265, 267 (1st Cir.1996) (citing
> _Evergreen Marine Corp. v. Six_
> _Consignments of Frozen Scallops,_ 4 F.3d 90,
> 95 n. 5 (1st Cir.1993)). An independent
> examination would undoubtedly reach the
> same result. In Massachusetts, contract
> litigation is governed by " 'the local law of
> the state which, with respect to that issue,
> has the most significant relationship to the
> transaction and the parties.' " _Bushkin_
> _Assocs., Inc. v. Raytheon Co.,_ 393 Mass.
> 622, 632, 473 N.E.2d 662 (1985) (quoting
> Restatement (Second) Conflict of Laws §
> 188(1) (1971)); _see also Brennan v. Carvel_
> _Corp.,_ 929 F.2d 801, 806 (1st Cir.1991).
> Massachusetts law awards expectation
> damages. "The long-established general rule
> for breach of contract recovery in
> Massachusetts is that the wronged party
> should receive the benefit of his bargain,
> i.e., be placed in the same position as if the
> contract had been performed." _VMark_
> _Software, Inc. v. EMC Corp.,_ 37
> Mass.App.Ct. 610, 611 n. 2, 642 N.E.2d 587
> (1994) (citing _John Hetherington & Sons,_
> _Ltd. v. William Firth Co.,_ 210 Mass. 8, 21,
> 95 N.E. 961 (1911)).

> FN5. The parties and the district court
> distinguished between soft costs, such as
> legal and permit fees, and hard costs, such as
> construction of roads and utility lines. These
> categories are not relevant to this appeal.

TABULAR OR GRAPHIC MATERIAL SET AT
THIS POINT IS NOT DISPLAYABLE

The court then determined the Verderbers' share of
the profits, and added the commissions Mrs.
Verderber would have received:

TABULAR OR GRAPHIC MATERIAL SET AT
THIS POINT IS NOT DISPLAYABLE
The parties do not contest the calculations thus far.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

181 F.3d 81 (Table)
181 F.3d 81 (Table), 1999 WL 525953 (1st Cir.(Mass.))
**Unpublished Disposition**
**(Cite as: 181 F.3d 81, 1999 WL 525953 (1st Cir.(Mass.)))**

Page 3

On appeal, the Verderbers challenge only the district court's additional adjustment, explained in its ruling from the bench:

> That gives us, when I sum those, a total of $335,085.40. But against that, against that, there must be deducted so much of the development costs to which [the Verderbers] should have but have not contributed, giving them credit against the development costs, the soft development costs of $115,000, giving the Verderbers credit for $2,028 and then taking the sum of the hard and the soft development costs as reduced, their contribution would have been $293,428.81, which leaves judgment for the plaintiffs in the amount of $41,656.59. Judgment will enter for the plaintiff in that sum.

This final calculation can be restated as a formula:

TABULAR OR GRAPHIC MATERIAL SET AT
THIS POINT IS NOT DISPLAYABLE

The Verderbers dispute this portion of the ruling, contending that the district court deducted their share of the development costs twice. When the court subtracted total costs of $740,649 from the profits, the Verderbers argue, it fully accounted for their failure to pay their share of these costs.

The Verderbers' argument is best understood by looking at the contract from their perspective. Expectation damages should place the Verderbers in the position they would occupy had the contract been executed in full. Adopting the district court's factual findings, the Verderbers claim their final position should be as follows:

TABULAR OR GRAPHIC MATERIAL SET AT
THIS POINT IS NOT DISPLAYABLE

If the Verderbers had contributed nothing toward development costs, they argue, the end result would not change:

TABULAR OR GRAPHIC MATERIAL SET AT
THIS POINT IS NOT DISPLAYABLE

No matter how much they actually paid toward development costs, the Verderbers contend, they should receive $335,085.40, their share of the development profits. [FN7] The district court's calculation affected the Verderbers as follows:

TABULAR OR GRAPHIC MATERIAL SET AT

THIS POINT IS NOT DISPLAYABLE
The district court erred, the Verderbers conclude, by charging them for development costs, but then failing to reimburse them.

The Verderbers are correct. This calculation does not accurately reflect the benefit of their bargain. After subtracting costs from revenues to calculate profits, the district court should not have subtracted costs again. The district court's subtraction of $293,428.81 cannot be grounded in the contract, which required reimbursement of costs, and represents clear error if so intended. Having found the contested calculation unsupported by the facts, we next consider whether contract law otherwise supports a reduction in the Verderbers' recovery.

**\*\*3** As a preliminary matter, it is important to understand the district court's ruling on the relationship between the Verderbers' failure to pay 40% of the development costs and the Perrys' subsequent cancellation of the contract. "It is well established that a material breach by one party excuses the other party from further performance under the contract." *Ward v. American Mut. Liab. Ins. Co.,* 15 Mass.App.Ct. 98, 100, 443 N.E.2d 1342 (1983) (citing *Quintin Vespa Co. v. Construction Serv. Co.,* 343 Mass. 547, 554, 179 N.E.2d 895 (1962)); *see also Hastings Assocs., Inc. v. Local 369 Bldg. Fund, Inc.,* 42 Mass.App.Ct. 162, 171, 675 N.E.2d 403, *rev. denied,* 424 Mass. 1108, 678 N.E.2d 1334 (1997); Restatement (Second) Contracts § 237 (1981). If the Verderbers' failure to pay constituted an uncured material breach of the contract, this breach would excuse the Perrys' subsequent repudiation. Otherwise, the Perrys would be liable for a breach of their own. The district court twice examined these events. Ruling from the bench, the court found as follows:

> Let us first consider the performance of the Verderbers, because in order to recover under the contract, the Verderbers would have to perform what they were obliged to perform under the contract. This Court finds that they did not. It finds that it was evident to the Verderbers that whether it would be, Mrs. Paula Verderber especially is an experienced real estate entrepreneur. [sic] She well knew, she understood, she recognized that there would be significant both, what the parties here call both soft and hard development costs which would have to be incurred prior to the property ever being in a state that it could be sold on a parcel-by-parcel basis but for the contribution of 40 percent of the carrying costs on a certain note taken out by Mr.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

181 F.3d 81 (Table)
181 F.3d 81 (Table), 1999 WL 525953 (1st Cir.(Mass.))
**Unpublished Disposition**
**(Cite as: 181 F.3d 81, 1999 WL 525953 (1st Cir.(Mass.)))**

Page 5

(7th Cir.1975)). We find neither of these elements here. The Verderbers, who seek only the benefit of their bargain, cannot be unjustly enriched thereby. Similarly, the Perrys suffered no detriment corresponding to the district court's damage reduction. Because the contract required repayment of all costs before distribution of any profits, its execution would have fully reimbursed the Perrys for development costs they actually paid, regardless of whether the Verderbers had agreed to pay some of those costs.

While our discussion indicates that the reduced amount actually awarded rests on conceptual error, we appreciate that some reduction might be made from the Verderbers' otherwise reasonable expectation if the Perrys had themselves been damaged as a result of the failure of the Verderbers to pay their share of the development costs in a timely fashion. [FN11] Cf. _Lease-It, Inc. v. Massachusetts Port Auth._, 33 Mass.App.Ct. 391, 397, 600 N.E.2d 599 (1992) ( "[Plaintiff], despite its eventual material breach, may still recover damages from defendant for its [prior immaterial] breach; the measure of damages is limited, however, to the period between [defendant's] breach and [plaintiff's] material breach."). If any such damage claims were made and preserved, we do not preclude their consideration by the district court on remand.

III

For the reasons stated above, the reduction of damages by $293,428.81 was in error. Accordingly, we _vacate_ the judgment and _remand_ this case to the district court for further proceedings consistent with this opinion.

FN6. It is not clear how the district court arrived at this number. The court found total development costs of $740,649; 40% of these costs is $296,259.60. The court appears to have credited the Verderbers for actual payments of $2,830.79, the difference between $296,259.60 and $293,428.81. The record does not include an explicit finding of this figure.

FN7. Logically, under their view, the Verderbers should receive $335,085.40 plus reimbursement for any development costs they actually paid. While they acknowledge this result in their brief, the Verderbers seek only $335,085.40 on appeal.

FN8. This number is lower than 40% of the total costs, presumably because the district court credited the Verderbers for some money actually paid. See supra note 6.

FN9. The district court did not determine whether the Verderbers' failure to pay constituted a material breach.

FN10. Reimbursement and distribution would be made through a limited liability company ("LLC"), see Mass.Gen.L. ch. 156C (West Supp.1998), created to develop the land. The parties' use of an LLC does not affect the issues on appeal.

FN11. For example, damages might lie for the interest on the monies spent by the Perrys, and saved by the Verderbers, to pay the Verderbers' share of development costs.

181 F.3d 81 (Table), 1999 WL 525953 (1st Cir.(Mass.)), Unpublished Disposition

Briefs and Other Related Documents (Back to top)

• 1998 WL 34288789Original Image of this Document (PDF)

• 1998 WL 34288790Original Image of this Document with Appendix (PDF)

• 98-1625 (Docket) (Jun. 03, 1998)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

1991 WL 198557
1991 WL 198557 (E.D.Pa.)
(Cite as: 1991 WL 198557 (E.D.Pa.))

Page 1

**C**
Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.

William WAGNER and Beatrice Shroeder, et al.
v.
EAST COAST GROWERS.

**Civ. A. No. 91-3714.**

Sept. 30, 1991.

James F. Mundy, Harold I. Goodman, Raynes, McCarty, Binder, Ross & Mundy, Philadelphia, Pa., Jonathan D. Moses, William J. Sneckenberg & Assoc., Chicago, Ill., for plaintiffs.

*MEMORANDUM*

NEWCOMER, Senior District Judge.

*1 The instant case is before the court pursuant to the provisions of the Fair Labor Standards Act, 29 U.S.C. § § 206 and 207 and 28 U.S.C. § 1331. The Complaint set forth four counts including the Violation of Fair Labor Standards Act, Willful Violation of Fair Labor Standards Act, Violation of Pennsylvania Minimum Wage Act, and Violation of Pennsylvania Wage and Collection Law. Presently before this court is plaintiff's motion to dismiss defendant's counterclaim, which alleges that William Wagner has not repaid a loan made to him by defendant. For reasons that follow, the plaintiffs' motion will be granted.

*1. Factual Background*

Plaintiffs and those they wish to represent in a class action suit are all present or past employees of East Coast Growers, a horticultural establishment that grows plants for sale to retail outlets. Plaintiffs' allege that defendant has refused to pay the statutory requirement of one and one-half their regular pay rate for time worked over a forty hour per work week. Defendant contends that it is exempt from paying the overtime pay because of the nature of its business. Defendants have also counterclaimed against William Wagner for failure to pay an outstanding debt. Jurisdiction of the counterclaim is premised on the

courts jurisdiction over the plaintiffs' claims. As such, defendant contends that jurisdiction is proper pursuant to Fed.R.Civ.P. 13(a). Plaintiffs have moved to dismiss the counterclaim asserting that it does not arise out of the same transaction or occurrence as required under Rule 13(a).

*II. DISCUSSION*

Plaintiffs' claims present a federal question under the Fair Labor Standards Act [FN1]; defendant's counterclaim, however, is a common law debt, and presents no independent basis for jurisdiction. Such a counterclaim is within the jurisdiction of this court only if it is a compulsory counterclaim under Fed.R.Civ.P. 13(a). Baker v. Gold Seal Liquors, Inc., 417 U.S. 467, 469 n. 1 (1974).

The question in determining if a claim is a compulsory counterclaim is whether it bears a logical relationship to an opposing party's claim. *Xerox Corp. v. Scm Corp.,* 576 F.2d 1057, 1059. (3d Cir.1978).

[A] counterclaim is logically related to the opposing part's claim where separate trials on each of their respective claims would involve a substantial duplication of effort, and time by the parties and the courts. Where multiple claims involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties, basic fairness and considerations of convenience and of economy require that the counterclaimant be permitted to maintain his cause of action. Indeed the doctrine of *res judicata* compels the counterclaimant to assert his claim in the same suit for it would be barred if asserted separately.

*Id.* quoting *Great Lakes Rubber Corp. v. Herbert Cooper Co.,* 286 F.2d 631, 634 (3d Cir.1961).

*2 Defendant claims that its counterclaim arises out of the same transaction or occurrence as count IV of the complaint, because count IV questions the employment relationship of plaintiff and defendant, and the counterclaim "arises out of the same employment relationship." Defendant's Memorandum of Law at 2. Defendant's argument that the claim for repayment of a loan between employee and employer is related to plaintiffs' claim

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1991 WL 198557
1991 WL 198557 (E.D.Pa.)
**(Cite as: 1991 WL 198557 (E.D.Pa.))**

Page 2

that the employer is in violation of state and federal labor standards, is meritless.

None of the above cited concerns would be addressed by retaining jurisdiction over defendant's counterclaim. The claim and counterclaim will present entirely different legal, factual, and evidentiary questions. The primary concerns involved with the plaintiffs' complaint will be whether defendant has violated state and federal labor laws and whether they are exempt from such laws because of the nature of their business. The defendant's counterclaim, however, involves general factual issues of whether a loan was transacted and whether repayment is still owing.

The facts surrounding the loan have no logical relationship to the facts that need to be proven to demonstrate a violation of labor laws. In order to succeed on the counterclaim the defendant will need to demonstrate that the existence and terms of a contract. These facts have nothing, whatsoever, to do with plaintiffs' underlying claims. Defendant will not be precluded from bringing his claim at another time. The only connection the claims have is that they occurred in the employment context. This is insufficient to meet the logical relationship test set forth in the Third Circuit.

An appropriate order shall follow.

*ORDER*

AND NOW, this 30th day of September, 1991, upon consideration of plaintiffs' Motion to Dismiss Counter-Claim and defendant's response thereto, and consistent with the foregoing Memorandum, it is hereby ORDERED that plaintiffs' Motion to Dismiss defendant's Counter-claim is GRANTED.

AND IT IS SO ORDERED.

> FN1. Counts III and IV of plaintiffs Complaint are state law claims over which this court may exercise pendent jurisdiction.

1991 WL 198557 (E.D.Pa.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.